## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial but are sufficient to prove the crime of mail fraud, in violation of 18 U.S.C. § 1341.*

Between at least in or about September 2014 and in or about January 2015, in the District of Maryland and elsewhere, the Defendant, **ADRIAN BROWN ("BROWN")**, devised and intended to devise a scheme and artifice to defraud Insurance Company A and to obtain money and property from Insurance Company A by means of false and fraudulent pretenses, representations, and promises ("the scheme to defraud").

On September 12, 2014, **BROWN** obtained an auto insurance policy from Insurance Company A for a 1973 Chevrolet Caprice ("1973 Caprice"). **BROWN** stated he owned the 1973 Caprice. The policy covered the 1973 Caprice from September 12, 2014, through March 12, 2015, and was insured for the lesser of the actual cash value or $40,000.

On December 4, 2014, at 11:45 a.m., **BROWN** notified Prince George's County Police Department ("PGPD") that his 1973 Caprice was stolen from an apartment complex in Temple Hills, Maryland. **BROWN** told the responding officer that a witness observed his vehicle being towed from the apartment complex by a red tow truck. **BROWN** said that he contacted the company that has the towing contract for the apartment complex and found out that they did not tow his vehicle. A PGPD vehicle theft report was taken.

On December 5, 2014, **BROWN** made a claim to Insurance Company A that his 1973 Caprice was stolen. Insurance Company A established a reserve of $10,000 for this claim. Reserves are liabilities, expenses, or losses that, for statutory and regulatory reasons, must appear on an insurance company's balance sheet.

Later on that same day, a recorded statement was taken from **BROWN** by a claims adjustor for Insurance Company A. During the statement, **BROWN** reiterated the same story. He further said that he had purchased the vehicle approximately seven months earlier in a private sale. He said that the car was parked in a parking lot off of Naylor Road and Alabama Avenue in Southeast Washington, D.C., and that the car had a "for sale" sign in the window. **BROWN** said he paid $2,100 in cash for the 1973 Caprice. **BROWN** further stated that he performed some work on the vehicle himself, including obtaining and installing a new bumper and rims, and performing some engine work. **BROWN** further said that he titled the car approximately four months earlier. **BROWN** said the car was clean and in running condition.

On December 9, 2014, the claims adjuster examined the scene of the vehicle theft and made contact with **BROWN**. **BROWN** showed the adjuster a photo of the car on his phone. The photo was of a darker green-colored car. **BROWN** emailed the photo to the adjuster. The adjuster also

requested the car keys and any receipts **BROWN** had for work performed on the car. **BROWN** stated that the car keys were at work, along with receipts for the bumper, wheels, and paint job. **BROWN** said that his cousin painted cars, and the car had black paint on it when he purchased it.

On December 12, 2014, Insurance Company A sent **BROWN** a letter from its office in Glen Burnie, Maryland, informing **BROWN** that Insurance Company A was in the process of investigating **BROWN**'s claim. The letter further informed **BROWN** that Insurance Company A could not bring the matter to a conclusion because Insurance Company A needed a number of items from **BROWN**, including keys to the vehicle, receipts for auto maintenance, cell phone records, bank records or receipts for the car purchase, and other documents. **BROWN** never responded to this request.

Insurance Company A's Special Investigations Unit researched the car's title history. The investigator learned that the 1973 Caprice was sold by a woman in Fruitland, Idaho, to a man in New Plymouth, Idaho, in June 2014. The car was then listed for sale on Craigslist, by the man's son, and sold to another man in Eagle, Idaho, around July 23, 2014. Investigators reviewed additional Craigslist advertisements and a listing from September 8, 2014, with the title, "1973 Impala no title motor or tranny 4 doors parts." The advertisement ran again on December 6, 2014.

On July 28, 2015, Insurance Company A notified the Maryland Insurance Fund Division that the 1973 Caprice had been recovered as an abandoned vehicle in Vancouver, Washington. On July 31, 2015, agents with the National Insurance Crime Bureau ("NICB") went to see the vehicle. They photographed the car and prepared an NICB inspection report. Their inspection report shows that the vehicle identification number ("VIN") on the car matches the VIN on **BROWN**'s vehicle. The report identifies the car's color as light green. The examination did not identify anywhere that the car was painted pine green over the top of its original color of light green. The agents verified that the vehicle had not been painted over the top of the original factory paint. The roof had rust spots on it. The car had no engine, transmission, or hood.

SO STIPULATED:

_____
Bryan E. Foreman
Assistant United States Attorney

_____
Adrian Brown
Defendant

_____
Lisa Lunt, Esq.
Counsel for Defendant